UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **Devi Pancho**, *Plaintiff*, v. **National Credit Adjusters, LLC**, *Defendant*. | Case No.:6:22-cv-2292<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Devi Pancho** ("**Ms. Pancho**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **National Credit Adjusters, LLC ("NCA")**, stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Pancho against NCA for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), the Florida *Civil Remedies for Criminal Practices Act*, Florida Statutes § 772.101, *et. seq.* ("**CRCPA**").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's FDCPA claims arises under 28 U.S.C. § 1331, as the FDCPA is a federal statute.

3. This Court has supplemental jurisdiction for Plaintiff's CRCPA claims under 28 U.S.C. § 1367.

4. NCA is subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by NCA within the Middle District of Florida

## PARTIES

6. **Ms. Pancho** is a natural person who at all times relevant has resided in the city of Orlando, Orange County, Florida.

7. Ms. Pancho is a *Consumer* as defined by 15 U.S.C. § 1692a(3).

8. **NCA** is a Kansas limited liability company with a principal business address of **327 W 4th Street, Hutchinson, Kansas 67501.**

9. NCA is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.**

10. NCA is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that NCA uses an instrumentality of commerce, including the U.S. mail and / or telephone, interstate and within the state of Florida, for its business, the principal purpose of which is the collection of debts, and / or NCA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11. NCA is licensed to collect consumer debts in the State of Florida, as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA0900486**.

## FACTUAL ALLEGATIONS

### Total Makes an Illegal Loan to Ms. Pancho

12. In or around May 2017, Ms. Pancho obtained an open-ended line of credit (the "**Account**") from the online lender Total Card, Inc. ("**Total**").

13. The Account had a stated credit limit of $300.

14. Ms. Pancho used the Account for household expenses.

15. The Account arose from the purchase of goods and services which were primarily for family, personal, or household purposes, specifically charges for consumer goods and services, and therefore the Account meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5).

16. Florida Statutes § 687.071(2) renders the extending of credit at annual interest rates of 25 percent a criminal offense.

17. Florida Statutes § 687.071(7) renders any loan in violation of Florida Statutes § 687.071(2), and any debt stemming from such extension of credit, void and unenforceable.

18. On information and belief, the annual interest rates on the Account exceeded **25% annually**.

19. Ms. Pancho's Account was thus void *ab initio*. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936);

*River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

20. The Account is therefore an "unlawful debt" per Florida Statutes § 772.102(2).

21. Florida law prohibits any recovery of the principal on such loans or extensions of credit. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

22. <u>Any</u> amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

## **Total Engages in Rent-a-Bank Scheme with TBOM**

23. The Total® Visa Card is a registered trademark of Total Card, Inc.

24. In December 2020, Total was sold to the California-based FinTech company Vervent, Inc.; the card was renamed the "Vervent Card."

25. Prior to this time, Total performed all substantial business functions involving Total Visa from its own offices.

26. Total provided consumer financing options to deep sub-prime consumers, at interest rates illegal in the vast majority of states, including Florida.

27. The highest lawful rate Total could charge in Florida is 18% annually.

28. Total, as a non-bank entity, is subject to Florida's restrictions on interest rates.

29. In an effort to avoid state usury laws, such as Florida's, Total claims its Total Visa Cards were issued by The Bank of Missouri ("TBOM"), a small bank in Missouri whose consumer loan portfolio consists exclusively of credit products made via non-bank "partners."

30. Total "partnered" with TBOM because banks are permitted to "export" the interest rate from their home state pursuant to the National Bank Act. *See* 12 U.S.C. § 85.

31. Such arrangements are referred to as "rent-a-bank" schemes.

32. Total Visa Cards carry interest rates of 34.99% annually, rates deemed illegal in a majority of states, including Florida.

33. Total Visa Cards generally have a $300 credit limit. **SEE PLAINTIFF'S EXHIBIT A.**

34. On paper, Total's loans and cardholder agreements claim that they are made by TBOM and serviced by Total.

35. However, TBOM had virtually nothing to do with the credit it extended utilizing Total's trademarked Total Visa name, other than to lend its name and status as a state-chartered bank to Total, a non-bank entity.

36. TBOM offers no credit card products or other unsecured consumer loans directly.

37. The vast majority of TBOM's consumer lending is through "partnership" agreements with non-bank lenders, similar to its agreement with Total.

38. Total thus launders its loans through TBOM, claiming that TBOM is the true lending entity.

39. However, TBOM stood to lose virtually nothing if a loan or extension of credit goes bad.

40. Likewise, TBOM stood to profit very little in the event a loan or extension of credit is paid in full at illegal annual interest rates, like the Total Account granted to Ms. Pancho.

41. Rather, TBOM collected a small, but guaranteed, fee for each extension of credit originated as part of the rent-a-bank scheme with Total, along with the payment of certain other fees which constitute the "rent."

42. Total's partnership with TBOM required it to purchase extensions of credit like the one made to Ms. Pancho almost immediately after origination.

43. Total also maintains a cash collateral account with TBOM, an alternative collateral account, and letters of credit which benefit TBOM.

44. Therefore Total, and not TBOM, has the predominant economic interest in loans made to consumers like Ms. Pancho.

45. Total is thus the true lender of the loans. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018).

46. As per Total's business model, once TBOM "made" the extension of credit to Ms. Pancho, the receivable balance and interest of the Total Account was immediately assigned to Total by TBOM.

47. Total charged several fees for obtaining an extension of credit with Total, including a $75 annual fee. **SEE PLAINTIFF'S EXHIBIT A.**

48. Total also charged a program fee of $89, along with a monthly servicing fee after the first year, in the amount of $75 per year. *Id.*

49. The initial $75 annual fee is deducted from the $300 credit limit, leaving the consumer with an available credit limit of $225.

50. Thus, Ms. Pancho's Total Visa account incurred $164 of fees for a $300 line of credit.

51. Since 2009, credit card issuers have been limited to charging fees equal to 25% of the initial credit line, which would be $75 on a $300 line of credit. *See* 12 CFR § 1026.52(a)(1).

52. Total reconciled the accounts, posts payments and other credits to the accounts, and provides periodic billing statements to consumers.

53. Monthly periodic statements were produced by Total and mailed or emailed to consumers with its South Dakota address as the correspondence address.

54. In a similar fashion, Total produced and mailed monthly periodic statements to Ms. Pancho concerning her Total Visa Card.

55. Total also reported Ms. Pancho's account to several major ***Consumer Credit Reporting Agencies*** ("**CRAs**"), including Experian Information Solutions, Inc. ("**Experian**"). **SEE PLAINTIFF'S EXHIBIT B**.

56. The account name reported to Experian was, "BK OF MISSOURI/TOTAL CARD"; however, the address provided is the principal address for Total. *Id.*

57. Total, not TBOM, sold portfolios of charged-off consumer debt to third-party debt purchasers, and retained the funds for these purchases itself.

### NCA Attempts to Collect Usurious Loans from Ms. Pancho

58. In and Around February 2018, Ms. Pancho fell behind on payments for the Account.

59. By October 2018, Total claimed Ms. Pancho owed $432 on a $300 credit limit.

60. Around November 2018, Total sold the Account to JTM Capital Management, LLC ("**JTM**").

61. On or about August 2020, JTM either sold or otherwise assigned the Account to NCA.

62. NCA, pursuant to 15 U.S.C. § 1692g, thereafter mailed Ms. Pancho collection letters, seeking to collect the Account.

63. NCA also reported the purported "debt" monthly to the major CRAs, including Experian, beginning October 2020. **SEE PLAINTIFF'S EXHIBIT B.**

64. Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases,

that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

65. NCA certified to the CRAs that the debt it was reporting as "in collection," with $432 past due, indicated that Account was a legitimate, lawful debt.

66. NCA knew, or should have known, that it was collecting an illegal debt from Ms. Pancho.

67. NCA is a large debt buyer with a number of experienced lawyers advising it on consumer protection statutes.

68. Further, NCA has been subject to multiple actions by state regulatory authorities over its attempts to collect on illegally-issued consumer loans.

69. Close to 100 lawsuits have been filed against NCA for its collection of consumer loans made under illegal terms.

70. On information and belief, NCA was in possession of the original loan agreement documents creating the Account.

71. On information and belief, the usurious interest rate was printed in large, bold type on the Truth in Lending Act ("TILA") disclosure.

72. Ms. Pancho suffered severe emotional distress in being subjected to illegal collection actions over a loan by NCA which she, pursuant to Florida law, does not owe.

73. Ms. Pancho's credit reports and scores have been severely and adversely impacted from NCA's false reporting that she legitimately owes a debt in the amount of $432 to NCA.

74. Ms. Pancho has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

### COUNT I
### VIOLATIONS OF THE FDCPA
### 15 U.S.C. § 1692e

75. Ms. Pancho reincorporates paragraphs 1 – 74 as if fully stated herein.

76. NCA violated **15 U.S.C. § 1692e** when NCA used misleading and deceptive means to attempt to collect a debt by attempting to collect the Account from Ms. Pancho, a Florida resident, both in writing and via credit reporting, claiming debts from an unlicensed, non-bank entity, Total, bearing annual interest exceeding 25%, was a legal, valid, and enforceable debt, when the Account was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Pancho respectfully requests that this Honorable Court enter judgment against NCA, for:

    a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d. Such other relief that this Court deems just and proper.

### COUNT II
### VIOLATIONS OF THE FDCPA
### 15 U.S.C. § 1692e(10)

77. Ms. Pancho reincorporates paragraphs 1 – 74 as if fully stated herein.

78. NCA violated **15 U.S.C. § 1692e(10)** when NCA used misleading and deceptive means to attempt to collect a debt by attempting to collect the Account from Ms. Pancho, a Florida resident, both in writing and via credit reporting, claiming debts from an unlicensed, non-bank entity, Total, bearing annual interest exceeding 25%, was a legal, valid, and enforceable debt, when the Account was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Pancho respectfully requests that this Honorable Court enter judgment against NCA, for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

### COUNT III
### VIOLATIONS OF THE FDCPA
### 15 U.S.C. § 1692e(2)(a)

79. Ms. Pancho reincorporates paragraphs 1 – 74 as if fully stated herein.

80. NCA violated **15 U.S.C. § 1692e(2)(a)** when NCA made a false representation about the character, amount and/or legal status of a debt by attempting to collect from Ms. Pancho, a Florida resident, both in writing and via credit reporting, debts from an unlicensed, non-bank entity, Total, bearing annual interest exceeding

25%, was a legal, valid, and enforceable debt, when the Account wase null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Pancho respectfully requests that this Honorable Court enter judgment against NCA, for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FDCPA
## 15 U.S.C. § 1692e(8)

81. Ms. Pancho reincorporates paragraphs 1 – 74 as if fully stated herein.

82. NCA violated **15 U.S.C. § 1692e(8)** when NCA communicated credit information which was false, and which NCA knew, or should have known was false, to wit, that debts from an unlicensed, non-bank entity, Total, bearing annual interest exceeding 25%, was a legal, valid, and enforceable debt, and that Ms. Pancho thus actually owed the $432 balance, when she did not owe them as the Account was null, void and unenforceable against her pursuant to Florida law.

**WHEREFORE,** Ms. Pancho respectfully requests that this Honorable Court enter judgment against NCA, for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

### COUNT V
### VIOLATIONS OF THE FDCPA
### 15 U.S.C. § 1692f(1)

83. Ms. Pancho reincorporates paragraphs 1 – 74 as if fully stated herein.

84. NCA violated **15 U.S.C. § 1692f(1)** when NCA attempted to collect an amount not authorized by contract or law – to wit, the entire purported Total and Continental Accounts-- from Ms. Pancho through written demands and credit reporting, when the Accounts were null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Pancho respectfully requests that this Honorable Court enter judgment against NCA, for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

### COUNT VI
### VIOLATIONS OF THE CRCPA
### FLA. STAT. § 772.103(4)

85. Ms. Pancho reincorporates paragraphs 1 – 74 as if fully stated herein.

86. On information and belief NCA has an ongoing relationship with JTM whereby JTM assigns Total accounts to NCA for collection.

87. On information and belief NCA determines the means for collection and receives a portion of all amounts collected from JTM.

88. NCA and JTM thus meet the definition of an "enterprise" within the CRCPA, Fla. Stat. § 772.102(3).

89. NCA violated **Florida Statutes § 772.103(4),** when they conspired with JTM to collect an unlawful debt - the Account.

90. NCA took actions in furtherance of this conspiracy, including mailing collection letters and reporting the Accounts to the nationwide CRAs as a purported unpaid debt, damaging Ms. Pancho's credit and, in effect, holding her credit report hostage until she paid the unlawful debts.

91. NCA has attempted to collect virtually-identical debts through credit reporting, phone calls, demand letters, and threats of litigation from hundreds, if not thousands, of other Florida residents, and is therefore aware of the illegality of such debts.

**WHEREFORE,** Ms. Pancho respectfully requests this Honorable Court enter judgment against NCA, ordering:

    a. Threefold the amount of actual damages or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to Florida Statutes § 772.104(1);

    b.    Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statutes § 772.104(1); and,

    c.    Any other relief this Court deems equitable and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Ms. Pancho hereby demands a trial by jury on all issues so triable.

Respectfully submitted on December 9, 2022, by:

                                            **SERAPH LEGAL, P. A.**

                                            */s/ Bridget L. Scarangella*
                                            Bridget L. Scarangella, Esq.
                                            Florida Bar No.: 1022866
                                            BScarangella@seraphlegal.com
                                            1614 North 19th Street
                                            Tampa, FL 33605
                                            Tel: 813-567-1230
                                            Fax: 855-500-0705
                                            *Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**
A    Total's Terms and Conditions – Excerpt
B    Ms. Pancho's Experian Consumer Disclosure, November 3, 2022, Excerpt